PAUL A. MATTEONI, Nevada Bar No. 3486
LUCY C. CROW, Nevada Bar No. 15203
JACKSON R. CRAWFORD, Nevada Bar No. 16513
WOMBLE BOND DICKINSON (US) LLP
One East Liberty Street, Suite 300
Reno, NV 89501-2128
Tel: 775.823.2900
Fax: 775.823.2929
Paul.Matteoni@wbd-us.com
Lucy.Crow@wbd-us.com
Jackson.Crawford@wbd-us.com

*Attorneys for Plaintiff Ernest Moody*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ERNEST W. MOODY, as Trustee of the ERNEST W. MOODY REVOCABLE TRUST DATED JANUARY 2009,<br><br>Plaintiff,<br><br>v.<br><br>TAHOE REGIONAL PLANNING AGENCY, a bi-state regional planning agency created by interstate compact; and DOES, I-X, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff ERNEST W. MOODY, as Trustee of the MOODY REVOCABLE TRUST DATED JANUARY 2009 ("Moody") brings this action against Defendant TAHOE REGIONAL PLANNING AGENCY ("TRPA"), and to the extent applicable, DOES I-X, inclusive as follows:

**THE PARTIES**

1. Plaintiff Ernest W. Moody, as Trustee of the Moody Revocable Trust Dated January 2009 is the owner of real property located at 181 Yellow Jacket Road, Douglas County, Nevada, 89413, APN 1418-10-401-004 ("Moody Property").

2. Defendant Tahoe Regional Planning Agency ("TRPA") is a bi-state regional planning agency created by the Tahoe Regional Planning Compact.

WOMBLE BOND DICKINSON
One East Liberty Street
Suite 300
Reno, NV 89501-2128

3. Mr. Moody alleges that Defendants named herein as Does I through X are individuals, corporations, limited-liability companies, partnerships, associations, or other persons or entities who are responsible in some manner or capacity for the acts alleged herein, but whose names are unknown to Mr. Moody at this time. Mr. Moody will seek leave to amend this Complaint to include the names of Does I through X when the identities of such defendants become known to Mr. Moody.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Tahoe Regional Planning Compact ("Compact") sanctioned by Congress pursuant to the United States Constitution, Article I, Section 10. Under Article VI(j) of the Compact, an aggrieved person alleging TRPA has failed to comply with the Compact or with an ordinance or regulation adopted by TRPA may bring an action against TRPA in an appropriate United States court.

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and the Property is located in Douglas County, Nevada.

**FACTUAL BACKGROUND**

**A. Tahoe Regional Planning Agency and Code of Ordinances**

6. TRPA is an environmental planning agency tasked with regional planning, development and redevelopment oversight, regulatory enforcement, and implementation of environmental protection and restoration programs for the Lake Tahoe Region in Nevada and California. This includes the construction and modification of piers, boat ramps, and other structures along the shoreline of Lake Tahoe.

7. TRPA's Code of Ordinances ("Code"), Chapter 84, "Development Standards Lakeward of High Water in the Shorezone and Lakezone," governs development of piers, boat ramps, and other lakeward structures.

8. Under Section 84.5.3(F), a private boat ramp may be converted into a pier provided the conversion complies with applicable portions of Sections 84.4.2 and 84.4.3, setting forth the



WOMBLE BOND DICKINSON
One East Liberty Street
Suite 300
Reno, NV 89501-2128

WOMBLE BOND DICKINSON
One East Liberty Street
Suite 300
Reno, NV 89501-2128

development standards for piers.

9. Specifically, Section 84.5.3(F) provides:

> **Conversion.** A legally existing private boat ramp may be converted to a pier, provided the converted boat ramp (pier) and littoral parcel receiving the pier shall comply with the **applicable** eligibility and development provisions for additional piers set forth in 84.4.2 and 84.4.3, respectively, of this Chapter. (emphasis added)

10. TRPA does not provide any guidance on what portions of Sections 84.4.2 and 84.4.3 are "applicable" to private boat ramp entitlements.

11. Chapter 84.4 governs "piers" generally. Section 84.4.2 sets forth the eligibility requirements for piers. Section 84.4.3 sets forth the development standards for piers, which are extensive.

**B. The Moody Property and Efforts to Construct a Pier**

12. In 2011, Mr. Moody acquired the Moody Property which abuts Lake Tahoe.

13. The Moody Property does not have an existing pier.

14. Mr. Moody seeks to construct a pier for the Property and has discussed alternative routes to do so with TRPA, including transferring a banked boat ramp entitlement and converting it into a pier.

15. In 2020, Mr. Moody, along with his realtor and consultant, Michael Fahey ("Fahey"), met with TRPA to seek guidance regarding whether Mr. Moody could bank an entitlement for a boat ramp from another property, transfer that entitlement to the Moody Property, and convert the boat ramp entitlement into a pier entitlement, thereby allowing Mr. Moody to construct a pier at the Moody Property. TRPA represented this conversion and transfer was possible.

**C. The LCR Banked Boat Ramp Entitlement**

16. Circa 2020, the Lakeside Cove Resort Homeowners Association ("LCR") had a private boat ramp on LCR's parcel located at 1150 U.S. Highway 50, Skyland, Nevada 89448, APN 1418-34-310-013 ("LCR Property").

17. The LCR boat ramp constituted a legally existing nonconforming structure, having been lawfully permitted or constructed prior to February 10, 1972. Today, under Code Section

84.5.2.B, private boat ramps are no longer permitted due to their significant adverse environmental impacts on Lake Tahoe. Private boat ramps facilitate the launch of uninspected watercraft into the lake, which is a primary vector for the introduction and spread of invasive aquatic species. Meaning, while the LCR boat ramp was a legal structure, it could not be built today due to TRPA's prohibition on private boat ramps. TRPA has an interest in the removal of private boat ramps because of the environmental risks they pose.

18. On or about September 1, 2020, LCR (through its authorized representative and land use consultant, Kevin Agan) applied for a TRPA permit to bank, *i.e.*, preserve, the legally existing, nonconforming boat ramp, under TRPA File No. ERSP2020-1413 ("Boat Ramp Banking Application").

19. On or around December 17, 2020, Tiffany Good ("Good"), a Principal Planner at TRPA, approved the Boat Ramp Banking Application subject to specific conditions of approval.

20. The conditions of approval required the concrete boat ramp to be fully removed and the surrounding area to be restored in accordance with applicable TRPA standards.

21. On or about June 18, 2021, Ms. Good issued a letter advising that LCR had complied with all conditions of approval required for the completion of the Boat Ramp Banking Application, therefore, the entitlement was banked.

22. TRPA is aware that boat ramp entitlements are often banked in order to sell or transfer the entitlement. Upon information and belief, TRPA was aware that LCR intended to transfer its banked entitlement.

23. LCR removed the boat ramp and restored the shoreline to its original state, thereby conferring a benefit on the public and furthering TRPA's mission.

**D. <u>Transfer of the LCR Banked Boat Ramp Entitlement to the Moody Property</u>**

24. On June 24, 2021, Mr. Moody applied for a Single-Parcel Pier Proposal under TRPA File No. PREC2021-0814 in an effort to obtain a pier through TRPA's pier lottery system.

25. On July 6, 2021, Ms. Good completed and issued the Single Parcel Pier Preliminary Application Review, determining that the subject parcel did not contain "any deed restrictions, easement, or other restrictions that would disqualify the parcel from having a pier."



WOMBLE BOND DICKINSON
One East Liberty Street
Suite 300
Reno, NV 89501-2128

26. Although eligible to receive a pier entitlement through the lottery, Mr. Moody was not selected in the pier lottery that year and continued to pursue a conversion and transfer of an entitlement that would allow Mr. Moody to construct a pier.

27. On August 10, 2021, Mr. Moody entered into an agreement with LCR to acquire a boat ramp entitlement for transfer to the Moody Property, which Mr. Moody would then convert into a pier entitlement. That agreement was later amended in December 2022.

28. Mr. Moody agreed to pay LCR nearly $1 million for the boat ramp entitlement.

29. In or around September 2021, Mr. Agan, as a representative of Mr. Moody, and Ms. Good engaged in discussions concerning Mr. Moody's intent to transfer the banked boat ramp entitlement from the LCR Property to the Moody Property. Mr. Agan informed Ms. Good that the purpose of the transfer was to ultimately convert the banked boat ramp entitlement to a pier that was to be constructed on the Moody Property.

30. On or about September 30, 2021, Mr. Moody, via Mr. Agan, submitted a formal permit application to transfer the banked boat ramp entitlement from the LCR Property to the Moody Property ("Transfer Application") based on Mr. Agan's conversations with Ms. Good.

31. On or about October 8, 2021, TRPA assigned the Transfer Application, TRPA File No. SSTR2021-1279.

32. On or about November 3, 2021, Mr. Agan emailed Ms. Good to inquire as to the estimated timeframe in which Mr. Moody could expect the TRPA to complete its review of the Transfer Application.

33. The Transfer Application was marked "Review Paused (additional Info Required)" on November 6, 2021, by Ms. Good.

34. On or about December 13, 2021, Ms. Good responded to Mr. Agan's November 3, 2021, email, stating:

> I thought we talked about the boat ramp to pier conversion/transfer needing to come in as a pier project? It looks like from the application filed for 1418-34-301-013, you want to transfer the entitlement and bank it on the receiving parcel. But in order for you to make the findings associated with a **pier** transfer, you need to demonstrate compliance of the reconstructed pier with the design and development standards as well as the scenic quality standards. You can't make these findings without a proposed project on the



WOMBLE BOND DICKINSON
One East Liberty Street
Suite 300
Reno, NV 89501-2128

> receiving parcel. And I do recall having this conversation with you earlier this year. As a result, I've made SSTR2021-1279 incomplete. Please let me know if you have correspondence indicating a different determination. I will also speak to current planning about it so that we are all on the same page. (emphasis added)

35. Through this and subsequent communications, TRPA staff represented that the banked boat ramp entitlement could be transferred to the Property and converted into a pier entitlement if Mr. Moody complied with the Code required design, development, and scenic standards for the new pier project.

36. Piers are heavily regulated in Lake Tahoe, and applying to construct a new pier is an expensive, time-consuming process. TRPA Code Section 84.4.3.A sets forth the general development standards for piers, including design criteria, pier color, scenic mitigation, fish habitat mitigation, lighting limitations, accessory structure standards, and signage. Section 84.4.3.B sets forth additional standards for single-use piers (such as what Mr. Moody proposed here), including pier orientation, length, width, visible mass, height (deck elevation), setbacks and spacing, accessory features, as well as design and environmental requirements.

37. Before proceeding with the necessary steps to comply with the extensive development standards, design criteria, and scenic mitigation measures required for the new pier application, Mr. Agan sought another confirmation that the Moody Property was eligible to receive the banked boat ramp entitlement and convert it into a pier structure.

38. On or about December 20, 2021, Mr. Agan, responded to Ms. Good's December 13, 2021 email stating: "[t]o keep the transfer process simple and straightforward, it is encouraged to confirm (which we have prior to filing) the eligible parcel can receive this entitlement which is consistent with the TRPA development right transfer process, thus not holding up a process for a yet undefined project."

39. Between 2018 and 2021, TRPA began implementing amendments to the Code revising the development rights framework governing the application and transfer of development rights and updated its Shoreline Plan governing shorezone structures, including piers, buoys, and boat ramps. Prior to these amendments, TRPA generally processed applications for the transfer of shorezone entitlements in the same manner as applications involving the transfer of development



WOMBLE BOND DICKINSON
One East Liberty Street
Suite 300
Reno, NV 89501-2128

rights for residential construction projects.

40. Despite Mr. Agan's request for another confirmation before proceeding with the expensive application, Ms. Good did not respond to Mr. Agan's December 20, 2021, email.

41. Adhering to TRPA's direction to apply for a pier to transfer and convert the banked entitlement, in 2022 and 2023, Mr. Moody undertook the substantial and expensive efforts to prepare an application for a new pier at the Moody Property, including preparing and retaining experts to prepare site plans, elevation drawings, construction methodologies, lighting plans, environmental surveys, scenic analyses, and more.

42. On or about May 24, 2023, Mr. Agan emailed Ms. Good providing photographs of the Moody Property, as seen from Lake Tahoe, to satisfy the scenic mitigation component for the new pier application that Ms. Good directed in her December 13, 2021, email.

43. Specifically, Mr. Agan stated:

> In our endeavor to move this pending TRPA NEW **pier permit application** forward, please select the photograph from the lake in order for us to complete the scenic mitigation component for this project. The new pier will be less than 100 feet long emanating from the general location of the existing stone steps and landing on the shoreline. **This is the new pier project that is using a banked boatramp entitlement**. (emphasis added)

44. The subject line of Mr. Agan's May 24, 2023 email was "Moody Trust New Pier Project – TRPA SQA Vantage Point Selection Request (181 Yellow Jacket Road, Glenbrook, NV)," reflecting Mr. Moody's intent to construct a pier on the Moody Property "using a banked boatramp entitlement."

45. That same day, Ms. Good replied stating, "[h]ere is the approved scenic vantage point for [the Moody Property]." The returned photograph included an approval stamp executed by Ms. Good, dated May 24, 2023. Ms. Good did not assert the Moody Property was not eligible to receive a banked boat ramp entitlement.

46. TRPA's issuance of an "approved scenic vantage point" (including an approval stamp dated May 24, 2023) was an affirmative representation that TRPA was continuing to process the project as eligible for review under the Code's pier development and scenic standards, and



WOMBLE BOND DICKINSON
One East Liberty Street
Suite 300
Reno, NV 89501-2128

One East Liberty Street
Suite 300
Reno, NV 89501-2128
WOMBLE BOND DICKINSON

induced Mr. Moody to proceed with additional costly technical submissions required of a new pier application.

47. On or about December 22, 2023, Mr. Agan submitted a new pier application. The new pier application contained project plans concerning the transfer and conversion of the banked boat ramp entitlement from the LCR Property to a new pier structure on the Moody Property ("New Pier Application").

48. On or about January 24, 2024, Zach Davis, Assistant Environmental Specialist at TRPA ("Davis"), emailed Mr. Agan advising him that the New Pier Application was incomplete and requested additional documentation. Specifically, Mr. Davis requested revisions to the easement/property restrictions on the application, the site plan, and the scenic analysis. Mr. Davis did not assert the Moody Property was not eligible to receive a banked boat ramp entitlement.

49. On or about February 15, 2024, Mr. Agan submitted supplemental materials in support of the New Pier Application, including updated project description, construction methodology documentation, project site mapping/scenic calculations, and shorezone exhibit drawings.

50. On or about March 27, 2024, Brandy McMahon, a Principal Planner at TRPA ("McMahon"), emailed Mr. Agan stating that the transfer and conversion was "not allowed" because the parcels were not within the same scenic unit (*i.e.*, shorezone areas sharing similar characteristics) and were in non-attainment scenic units (*i.e.*, areas where development is restricted due to environmental concerns).

51. Specifically, Ms. McMahon contended:

> I started reviewing the above referenced application, which includes a request to transfer a banked boat ramp on [the LCR Property] (ref. ERSP2020-1413) to the [Moody Property] and conversion to a single-parcel pier. The banked boat ramp is located in Scenic Shoreline Travel Route 27, Lincoln Park, which is a non-attainment scenic area, and the subject site is located in Scenic Shoreline Travel Route 26, Cave Rock, which is also a non-attainment scenic area. The boat ramp conversion to a pier and transfer to the subject site is not allowed because the properties are not in the same scenic unit and the receiving parcel is in a non-attainment scenic unit (see TRPA Code, 84.5.2.F and 84.4.3.G.1 below).

52. This was the first instance a TRPA representative had asserted that the banked boat ramp entitlement could not be transferred to the Moody Property, despite years of working with TRPA on the transfer and following its directions. TRPA continued to process the New Pier Application after Ms. McMahon's email.

53. On or about July 31, 2024, Mr. Moody received certified drawings and design renderings of the lakeview elevations, completed by John Pruyn Designs, Inc., as required by the design standards for new pier applications.

54. On or about August 8, 2024, Mr. Moody received additional drawings and design renderings, completed by Shaw Engineering, which included descriptions of fish habitat mitigation, defensible space limits, mooring locations, and land capability calculations, as required by the development standards for new pier applications.

55. On or about December 2, 2024, Mr. Moody obtained the 401 Water Quality Certification for the pier application.

56. On or about December 17, 2024, Mr. Agan filed an Application for Department of the Army Permit with the U.S. Army Corps of Engineers ("USACE").

57. On or about March 3, 2025—nearly five years after initial discussions with the TRPA regarding the boat ramp to pier conversion project—Ms. McMahon sent a formal letter to Mr. Agan denying the New Pier Application, citing to Code Section 84.4.3(G)(1) to support the denial.

58. On or about March 5, 2025, Mr. Moody received a letter from the USACE approving the New Pier Application under a Regional General Permit.

59. On or about March 18, 2025, the Nevada Division of State Land sent a letter to Mr. Moody advising of the TRPA's denial and that the NDSL permit cannot be issued.

60. In reliance on TRPA's directives and ongoing processing of the project, Mr. Moody incurred substantial costs, including professional fees for engineering, scenic analysis, and preparation of certified drawings and renderings, and pursued parallel federal and state approvals. TRPA's denial foreclosed issuance of related permits, including the Nevada Division of State Lands permit, causing concrete economic injury and delay damages.



WOMBLE BOND DICKINSON
One East Liberty Street
Suite 300
Reno, NV 89501-2128

One East Liberty Street
Suite 300
Reno, NV 89501-2128
WOMBLE BOND DICKINSON

**E. Appeal to TRPA Governing Board**

61. On or about March 24, 2025, Mr. Moody's legal counsel submitted a timely Statement of Appeal of the TRPA's denial of the New Pier Application.

62. On or about April 23, 2025, Mr. Moody's legal counsel submitted a Supplemental Written Statement to Support the Appeal.

63. Mr. Moody requested that the Governing Board overturn the denial of the New Pier Application on the grounds that: (1) there is a fundamental discrepancy in Code Section 84.4.3.A.6(d)(v) because Code Section 84.4.3.A.6(d)(v) specifically contemplates scenic mitigation for additional piers and the expansion of existing piers in a different non-attainment unit, not necessarily the same non-attainment unit where the conversion or transfer is occurring; (2) TRPA mistakenly relied on Code Section 84.4.3.G.1 to deny the project because that section applies to the transfer of pier entitlements, not boat ramp entitlements; (3) TRPA's policy to allow pier transfers within non-attainment scenic units, but not from one non-attainment scenic unit to an adjacent non-attainment scenic unit, is an arbitrary restriction that runs afoul of TRPA's mission; and (4) TRPA was inconsistent in its application of the Code for the project and never notified Mr. Moody of the non-attainment status prohibition of Code Section 84.4.3.G.1. Indeed, TRPA has awarded new piers to landowners whose properties are in non-attainment zones through the lottery system.

64. On March 25, 2026, the Governing Board held a hearing on Mr. Moody's Appeal.

65. During the hearing, Marsha Burch, Associate Counsel at TRPA ("Burch"), acknowledged that piers are generally safer structures than boat ramps because piers do not facilitate the launching of uninspected watercraft into the lake, thereby reducing the risk of introducing invasive species.

66. Ben Kieckhefer, TRPA Governing Board member ("Kieckhefer"), commented that this was not the first instance in which an applicant had advanced substantially through the permitting process without staff identifying concerns regarding eligibility. Mr. Kieckhefer referenced a prior matter involving a single-use pier within a homeowners' association and questioned, from a staff-process standpoint, why the alleged eligibility issue was not identified

earlier in the application review process.

67. In response, Ms. Burch contended that it would be impractical to investigate the eligibility of every parcel associated with a pier permit application, notwithstanding the fact that TRPA maintains parcel records through its Parcel Tracker system.

68. What followed was several hours of deliberation among Governing Board members regarding the meaning and application of the governing Code provisions. During the hearing, Board members openly expressed concern that the Code provisions were unclear, internally inconsistent, and susceptible to misinterpretation, and further discussed the potential need for amendments to clarify the governing standards.

69. Mr. Kieckhefer expressly acknowledged that the Code is internally inconsistent and "clunky." In particular, Mr. Kieckhefer noted that the Code separates provisions governing boat ramps—which contemplate conversion and transfer—while cross-referencing separate sections governing piers, which require any transfer to satisfy "applicable standards" for pier eligibility. Critically, the Code fails to identify which standards control, leaving the operative requirements ambiguous and subject to inconsistent interpretation and application by TRPA staff and applicants alike.

70. The lack of clarity in the governing provisions was further demonstrated by the Governing Board members' inability during the hearing to articulate or distinguish the difference between a "visually sensitive area" and an area deemed "not in attainment."

71. In response to these concerns, Ms. Burch and Graham St. Michel, General Counsel at TRPA ("St. Michel"), acknowledged during the hearing that there are "winners and losers with the Shoreline Plan."

72. After nearly two hours of debate, the TRPA Governing Board voted 8-5 to deny the Appeal.

**F. <u>Request for Reconsideration</u>**

73. On or about March 30, 2026, Mr. Moody submitted a formal Request for Motion to Reconsider Appeal of Denial of Moody Boat Ramp/Pier Conversion and Transfer Project ("Request for Reconsideration").



WOMBLE BOND DICKINSON
One East Liberty Street
Suite 300
Reno, NV 89501-2128

74. The Request for Reconsideration included a robust timeline from project inception, an analysis of potential use of a Shorezone Protective Structure, a public policy rationale for the pier project, a claim for detrimental reliance, and an affidavit of Mr. Agan in support of the reconsideration.

75. Under TRPA Rules of Procedure Section 2.5.2, a motion to reconsider may be made by any TRPA Governing Board member but may only be made no later than the next regular Governing Board meeting after the project or matter to be reconsidered was decided. For a project to be reconsidered at the subsequent meeting, a TRPA Governing Board member must request that reconsideration be placed on the next regular Governing Board agenda not more than seven days after the Governing Board meeting where the action on the project was taken.

76. On or about April 10, 2026, Mr. St. Michel emailed Mr. Moody's legal counsel to inform Mr. Moody that the TRPA expected to agendize a reconsideration vote for the TRPA Governing Board meeting on April 22, 2026. Mr. St. Michel advised that it would be a preliminary vote on whether to schedule a full reconsideration at a future Governing Board meeting.

77. On or about April 16, 2026, Mr. St. Michel emailed Mr. Moody's legal counsel to advise Mr. Moody that the TRPA Governing Board withdrew the motion for reconsideration of the Appeal and that the Governing Board's March 25, 2026 decision denying the Appeal constituted the TRPA's final action.

78. The Governing Board's decision to withdraw the motion for reconsideration was based upon the Governing Board's receipt of a declaration signed by Ms. Good, wherein Ms. Good alleges that she was unaware that the banked boat ramp entitlement was to be transferred to the Moody Property until the New Pier Application was submitted, despite Mr. Agan repeatedly telling her and despite Mr. Agan sending an email and scenic vantage photograph for an application "using a banked boatramp entitlement."

**FIRST CAUSE OF ACTION**

**(Declaratory Relief)**

79. Mr. Moody incorporates by reference paragraphs 1 through 78, inclusive, as though fully set forth herein.



WOMBLE BOND DICKINSON
One East Liberty Street
Suite 300
Reno, NV 89501-2128

80. The Court also has jurisdiction to grant declaratory relief under 28 U.S.C. §§ 2201–2202.

81. An actual, present, and justiciable controversy exists between Mr. Moody and TRPA concerning the interpretation and application of TRPA Code provisions that TRPA applied to support its denial of Mr. Moody's project, including whether Section 84.4.3(G)(1) applies to a banked boat ramp entitlement that has not yet been converted to a pier and whether TRPA's scenic-unit/non-attainment rationale is consistent with the Code.

82. An actual, present, and justiciable controversy exists between Mr. Moody and TRPA concerning whether TRPA is estopped from denying the application based on representations made throughout the application process that the boat ramp entitlement could be transferred to the Moody Property, provided Mr. Moody complied with the development standards, design criteria, and scenic mitigation measures required for a new pier application.

83. Without judicial consideration, Mr. Moody will continue to suffer harm because TRPA's contested interpretation prevents Mr. Moody from proceeding with the project despite TRPA's prior representations that the project could proceed and leaves unresolved the permissible use and transferability of the banked entitlement recognized by TRPA, including whether, and under what conditions, the entitlement may be lawfully exercised or converted.

84. A judicial determination is necessary and appropriate in order for Mr. Moody to confirm its rights, duties and interests with respect to the TRPA's interpretation of the Code, the Boat Ramp Transfer Application, the New Pier Application, and Mr. Moody's banked boat ramp entitlement.

85. Therefore, Mr. Moody seeks a declaration from this Court that:

a. Code Section 84.5.3(F)'s clause that a transferred boat ramp entitlement and the receiving parcel "shall comply with the applicable eligibility and development provisions for additional piers set forth in 84.4.2 and 84.4.3," is too vague to be enforceable because the "applicable" portions of Sections 84.4.2 and 84.4.3 are undefined, rendering it impossible for applicants to know what portions of Sections 84.4.2 and 84.4.3 TRPA are applicable to boat ramp



One East Liberty Street
Suite 300
Reno, NV 89501-2128
WOMBLE BOND DICKINSON

entitlements.

b. Code Section 84.4.3(G)(1), "Relocation and Transfer of Existing Piers" is inapplicable to a banked boat ramp entitlement that has not been converted into a pier, including because Section 84.5.3(F) is impermissibly vague and unenforceable.

c. Code Section 84.4.3(G)(1) is inconsistent with the Code.

d. TRPA's interpretation and application of Code Section 84.4.3(G)(1) to a banked boat ramp entitlement is arbitrary and capricious.

e. TRPA is estopped from denying the New Pier Application based on its course of misconduct in misleading Mr. Moody regarding the eligibility of the transfer project, notwithstanding his good-faith efforts to proceed in accordance with TRPA's direction and guidance.

f. TRPA's unlawful conduct violates the Tahoe Regional Planning Compact.

**SECOND CAUSE OF ACTION**

**(Equitable Estoppel / Promissory Estoppel / Detrimental Reliance)**

86. Mr. Moody incorporates by reference paragraphs 1 through 85, inclusive, as though fully set forth herein.

87. Through its staff's communications and directives, TRPA engaged in affirmative misconduct exceeding mere negligence by representing that Mr. Moody could pursue the transfer-and-conversion project through submission of a compliant pier application demonstrating satisfaction of applicable design, development, and scenic standards.

88. TRPA failed to disclose a material fact—namely, that it would ultimately contend the project was categorically prohibited under the Code based on scenic unit and non-attainment constraints.

89. TRPA further concealed this material fact by failing to disclose, throughout the multi-year period in which it accepted applications and required extensive technical submissions, that it would assert a categorical prohibition—despite Mr. Moody's express requests for confirmation that the Moody Property was eligible to receive the entitlement.

/ / /



WOMBLE BOND DICKINSON
One East Liberty Street
Suite 300
Reno, NV 89501-2128

90. At all relevant times, TRPA knew that the Moody Property was located within a non-attainment scenic unit adjacent to the scenic unit of the LCR Property, yet nevertheless directed Mr. Moody to proceed with preparation and submission of a new pier application.

91. Mr. Moody was unaware that TRPA would take the position that the proposed boat ramp–to–pier conversion project was prohibited on scenic unit and non-attainment grounds.

92. In reasonable reliance on TRPA's representations, Mr. Moody understood that the project would be permissible if it satisfied the applicable development, design, and scenic quality standards governing new pier construction.

93. Mr. Moody justifiably relied on TRPA's representations to its detriment by expending substantial time, effort, and financial resources in preparing and pursuing the project in accordance with TRPA's direction.

94. As a direct and proximate result of TRPA's misconduct, Mr. Moody has suffered, and will continue to suffer, substantial injustice, including the waste of considerable resources. Such conduct also undermines public policy by discouraging property owners from removing legally existing, nonconforming boat ramps from the Lake Tahoe shoreline.

95. Application of estoppel under these circumstances will not unduly prejudice the public interest. To the contrary, it will promote regulatory clarity and further environmental and scenic objectives, as Mr. Moody's proposed project incorporates mitigation measures and is intended to improve scenic conditions within the applicable unit.

96. At all relevant times, TRPA was aware that Mr. Moody intended to transfer the banked boat ramp entitlement to the Moody Property for the purpose of constructing a pier yet knowingly failed to disclose its position that such a transfer was prohibited under the Code.

97. TRPA intended, or reasonably should have expected, that Mr. Moody would rely on its representations, and that such reliance would result in material expenditures.

98. Mr. Moody reasonably relied on TRPA's representations and was unaware of TRPA's subsequent position until late in the administrative process.

99. By reason of the foregoing affirmative misconduct, and to prevent manifest injustice, TRPA should be equitably estopped from enforcing the subsequently asserted categorical



WOMBLE BOND DICKINSON
One East Liberty Street
Suite 300
Reno, NV 89501-2128

WOMBLE BOND DICKINSON
One East Liberty Street
Suite 300
Reno, NV 89501-2128

prohibition against Mr. Moody.

100. In the alternative, Mr. Moody seeks remand with instructions that TRPA apply the Code consistent with this Court's declaratory rulings and without reliance on an interpretation adopted only after Mr. Moody's reasonable reliance and substantial expenditures.

**THIRD CAUSE OF ACTION**

**(Violation of the Compact)**

101. Mr. Moody incorporates by reference paragraphs 1 through 100, inclusive, as though fully set forth herein.

102. Pursuant to Article VI of the Compact, any aggrieved person may file an action in an appropriate court of the States of California or Nevada or of the United States alleging noncompliance with the provisions of the Compact or with any ordinance or regulation adopted by the TRPA. *See* Compact at Article VI, Section (j)(3). Mr. Moody is an aggrieved person because he appeared, through his representatives, at the necessary administrative hearings.

103. In any action brought under Article VI, Section (j) challenging an adjudicatory act or decision of TRPA approving or disapproving a project, the scope of judicial review is limited to determining whether TRPA committed a prejudicial abuse of discretion.

104. A prejudicial abuse of discretion is established where TRPA has failed to proceed in the manner required by law or where its act or decision is not supported by substantial evidence in light of the entire record.

105. TRPA committed a prejudicial abuse of discretion because it (a) failed to proceed in the manner required by law by applying an interpretation of Code Sections 84.5.2.F and/or 84.4.3.G.1 that is inconsistent with the Code's plain text and as applied to a banked boat ramp entitlement to pier conversion project; (b) failed to disclose and apply appropriate governing standards consistently during the administrative process; and (c) issued a denial that is not supported by substantial evidence in light of the administrative record as a whole.

106. The record, including TRPA staff communications, completeness determinations, and the stated bases for denial, demonstrates that TRPA's legal interpretation drove the outcome and that the denial rests on an arbitrary construction of applicable Code provisions. To the extent

TRPA seeks to exclude relevant staff communications from the administrative record, Mr. Moody alleges procedural irregularity and requests appropriate relief to ensure a complete record and meaningful review.

107. As a direct and proximate result of TRPA's prejudicial abuse of discretion, Mr. Moody has suffered, and will continue to suffer, substantial damages.

**FOURTH CAUSE OF ACTION**

**(Violation of Due Process Rights)**

108. Mr. Moody incorporates by reference paragraphs 1 through 107, inclusive, as though fully set forth herein.

109. Under the Due Process Clause of the Fifth Amendment to the United States Constitution, the government cannot deprive any person of property without due process of law.

110. Mr. Moody has a property interest in the banked boat ramp entitlement and its transfer/conversion to the Moody Property for a pier.

111. TRPA deprived Mr. Moody of this property interest when it refused to process his Transfer Application and denied his New Pier Application.

112. TRPA's procedures were fundamentally unfair because Section 84.5.3(F) is unconstitutionally vague because "applicable" is undefined, rendering it impossible for a person of ordinary intelligence to know what portions of Sections 84.4.2 and 84.4.3 TRPA are applicable to boat ramp entitlements. Moreover, Section 84.5.3(F) fails to provide objective standards that establish minimum guidelines to govern enforcement. Section 84.5.3(F) is therefore unenforceable against Mr. Moody.

113. Mr. Moody has been damaged in an amount according to proof, including but not limited to the loss of use, diminution in property value, delay damages, carrying costs, permitting expenses, attorneys' fees and costs where authorized by law, and all other relief this Court deems just and proper.

/ / /

/ / /

/ / /

WOMBLE BOND DICKINSON
One East Liberty Street
Suite 300
Reno, NV 89501-2128

WOMBLE BOND DICKINSON
One East Liberty Street
Suite 300
Reno, NV 89501-2128

**FIFTH CAUSE OF ACTION**

**(Inverse Condemnation)**

114. Mr. Moody incorporates by reference paragraphs 1 through 113, inclusive, as though fully set forth herein.

115. At all relevant times, Mr. Moody possessed vested property rights and legally cognizable use rights associated with the existing boat ramp entitlement, including the right to convert the boat ramp entitlement to a pier and transfer the pier to another littoral parcel.

116. The boat ramp was legally existing and constituted a non-conforming use under applicable TRPA Code provisions. Mr. Moody and his predecessor-in-interest reasonably relied upon the continued recognition of those rights and uses in the acquisition and continued ownership of the boat ramp entitlement.

117. TRPA, through the arbitrary application of its Code, deprived Mr. Moody of all economically viable and beneficial use of the boat ramp entitlement, including by prohibiting the continued use, replacement, reconstruction, permitting, or reasonable modification of the structure while simultaneously denying Mr. Moody any economically feasible alternative means of exercising equivalent rights in Lake Tahoe.

118. TRPA further treated similarly situated pier structures more favorably while singling out Mr. Moody's boat ramp entitlement for disparate and unreasonable regulatory treatment despite acknowledgments by TRPA representatives and Governing Board members that piers present fewer environmental risks than private boat ramps, and despite TRPA's approval of several pier allocations within non-attainment units. TRPA's actions were arbitrary, capricious, and lacked sufficient proportionality to any legitimate governmental interest purportedly advanced.

119. As a direct and proximate result of TRPA's conduct, Mr. Moody has suffered a regulatory taking of protected property rights under the Fifth Amendment of the United States Constitution, entitling Mr. Moody to just compensation.

120. Alternatively, TRPA's actions substantially interfered with distinct investment-backed expectations and imposed a disproportionate burden on Mr. Moody that should properly be borne by the public as a whole, thereby constituting a compensable taking under applicable law.

121. Mr. Moody has been damaged in an amount according to proof, including but not limited to the loss of use, diminution in property value, delay damages, carrying costs, permitting expenses, attorneys' fees and costs where authorized by law, and all other relief this Court deems just and proper.

**JURY TRIAL DEMANDED**

Mr. Moody demands a trial by jury as his right under the Seventh Amendment to the Constitution of the United States or as given by statute. Fed. R. Civ. P. 38.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Moody respectfully requests the following relief:

A. A judicial determination that:

(1) Code Section 84.5.3(F)'s clause that a transferred boat ramp entitlement and the receiving parcel "shall comply with the applicable eligibility and development provisions for additional piers set forth in 84.4.2 and 84.4.3," is too vague to be enforceable because the "applicable" portions of Sections 84.4.2 and 84.4.3 are undefined, rendering it impossible for applicants to know what portions of Sections 84.4.2 and 84.4.3 TRPA are applicable to boat ramp entitlements.

(2) Code Section 84.4.3(G)(1), "Relocation and Transfer of Existing Piers" is inapplicable to a banked boat ramp entitlement that has not been converted into a pier, including because Section 84.5.3(F) is impermissible vague and unenforceable.

(3) Code Section 84.4.3(G)(1) is inconsistent with the Code.

(4) TRPA's application of Code Section 84.4.3(G)(1) to a banked boat ramp entitlement is arbitrary and capricious.

(5) TRPA is estopped from denying Mr. Moody's boat ramp to pier conversion project;

(6) TRPA's unlawful conduct violates the Tahoe Regional Planning Compact.



WOMBLE BOND DICKINSON
One East Liberty Street
Suite 300
Reno, NV 89501-2128

One East Liberty Street
Suite 300
Reno, NV 89501-2128
WOMBLE BOND DICKINSON

B. That the Court enter judgment granting Mr. Moody an injunction estopping TRPA from denying the boat ramp conversion project;

C. An award of just compensation;

D. An award of damages and reasonable attorneys' fees; and

E. That the Court grant such additional orders or judgments as may be necessary to remedy or prevent the unlawful practices complained of herein.

DATED this 22nd day of May, 2026.

WOMBLE BOND DICKINSON (US) LLP

By: */s/ Lucy C. Crow*
Paul A. Matteoni, Bar No. 3486
Lucy C. Crow, Bar No. 15203
Jackson R. Crawford, Bar No. 16513
One East Liberty Street, Suite 300
Reno, NV 89501-2128

*Attorneys for Plaintiff Ernest Moody*